Andrew D. Skale (SBN 211096)
askale@mintz.com
Ben L. Wagner (SBN 243594)
bwagner@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone: (858) 314-1500
Facsimile: (858) 314-1501

Attorneys for Plaintiffs
SOCIALZOID LLC AND ERIK GROSET

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOCIALZOID LLC, a California corporation; and ERIK GROSET, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE, INC., a Delaware corporation,<br><br>Defendant. | Case No. '14CV2144 AJB  JLB<br><br>**COMPLAINT FOR:**<br><br>1) **UNFAIR COMPETITION AND FALSE ADVERTISING;**<br>2) **INTENTIONAL INTERFERENCE WITH EXISTING BUSINESS RELATIONSHIPS;**<br>3) **UNJUST ENRICHMENT; AND**<br>4) **INJUNCTIVE RELIEF**<br><br>**[JURY DEMANDED]** |

SocialZoid, LLC ("SocialZoid") and Erik Groset, an individual ("Groset" or collectively "Plaintiffs") bring this suit for federal unfair competition, and common law unfair competition against Google, Inc. ("Google" or "Defendant") and allege as follows:

**THE PARTIES**

1. SocialZoid is a Limited Liability California corporation with its principal place of business at 2805 Carrillo Way, Carlsbad, CA 92009.

2. Erik Groset, is an individual residing in Carlsbad, CA.

3. Upon information and belief, Google is a Delaware corporation with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

4. Defendant's actions alleged herein were those of itself, its agents and/or licensees.

## JURISDICTION AND VENUE

5. This Court's jurisdiction rests upon 15 U.S.C. § 1121(a); 28 U.S.C. §§ 1338(a) & (b); and 28 U.S.C. § 1367(a).

6. This Court has jurisdiction over the federal unfair competition and false advertising claim pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a).

7. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) and § 1367(a) as all claims herein form part of the same case or controversy.

8. Personal jurisdiction exists over the Defendant because it conducts substantial business in California, has its principal place of business in California, and therefore has sufficient contacts such that it would not offend traditional notions of fair play and substantial justice to subject Defendant to suit in this forum. Defendant purposefully directed its harmful conduct alleged below at this forum, and purposefully availed itself of the benefits of California with respect to the claims alleged herein. A substantial part of the protected subject contract was to be performed in this district.

9. Venue in this district is proper under 28 U.S.C. § 1391 and 28 U.S.C. §1400 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

///

///

///

# FACTUAL ALLEGATIONS

## The Immense Harm from Google's Capricious and Unchecked Actions

10.     On June 30th, 2014, Mr. Groset quit his day job to concentrate on his growing and highly successful app company, SocialZoid.  In doing so, his livelihood depended on the business he had built for himself on the Google Play platform, as is the case for countless other independent developers that Google has overwhelmingly benefited from.

11.     SocialZoid has enjoyed an amazingly stellar reputation on Google Play. SocialZoid has carefully and zealously protected its reputation, created apps that users want, that behave how users expect them to behave, and add value to the user's smart phone or tablet experience.  As a result, SocialZoid obtained a large number of positive reviews, had a very high star rating, and was seen by users in the community as a trustworthy and cream-of-the-crop app developer on Google Play.  The only problem is that Google ignored all of this, and blundered forward with what appears to be an automated account deletion process that it stands behind blindly even when confronted with the errors and inequity it has created.

12.     Without any warning, the very next day after Mr. Groset quit his day job, July 1, 2014, Mr. Groset and all of the accounts even potentially believed by Google to be linked to Mr. Groset were banned from Google Play store.  The reason cited by Google was "Multiple Violations of the Content Policy."

13.     However, the "multiple violations" referred to three apps Google erroneously asserted violated its content policy.  What Google failed to note, however, is that SocialZoid has enjoyed a portfolio of 50+ apps with over 2.5 million downloads, hundreds of thousands of active users, tens of thousands of positive ratings (that cannot simply be transferred to a new account, and certainly not to another app platform), and years of hard work and sweat invested.

14.     Thus, by one click of a button, Google purported to wipe out years of

3

1  sweat and monetary investment and substantial goodwill that Mr. Groset and
2  SocialZoid had built up in the SocialZoid profile and app collection.
3      15.    The real problem however, was Google's complete inconsistent
4  treatment of the apps in question, which prevented Mr. Groset or SocialZoid from
5  even standing a chance of intuiting and complying with concerns Google did not even
6  make clear.  Instead, Google's policy of judging the acceptability of apps *after* they
7  go live (in contrast to the pre-approval procedures used by Apple, Amazon, Samsung
8  and even Barnes & Nobel) results in arbitrary and capricious notices of "violation"
9  that would have never got to that level had clear guidance been provided.
10     16.    This policy was, on information and belief, put into place not to best
11 protect the marketplace or app developers, but to allow Google to entice developers
12 to pump up the number of apps on its Google Play (to allow it to appear as robust as
13 possible, as quickly as possible), but make the developers bear all the consequences
14 when this policy results in good faith and honest conduct that Google later determines
15 to be a "violation."  The policy has become illogical, because Google can (and does)
16 pull apps at any time for any reason based on its subjective interpretation of its
17 acceptable use policies.  There is no real accountability for Google, and the
18 consequence of multiple erroneous removal decisions is not a recognition and
19 correction of such error by Google, but instead punishing the app developer who
20 happens to have suffered from such repeatedly erroneous removals.
21     17.    The apps placed on Google Play by Mr. Groset and SocialZoid were not
22 malicious, ill-intended, or capable of hurting or harming anyone, and what's more,
23 they didn't even violate the content policy as accused.

### The Erroneousness and Bad Faith of Google's Actions

25     18.    On July 1, 2014 Google sent a "notification from Google Play" saying
26 that they had removed SocialZoid's app "Kamasutra Animated HD" for violation of
27 its content policy:

4

1  a. "REASON FOR REMOVAL: Violation of the sexually explicit material provision of the Content Policy"

19. That portion of the content policy reads : "Apps that contain or promote pornography are prohibited; this includes sexually explicit or erotic content, icons, titles, or descriptions. Google has a zero-tolerance policy against child sexual abuse imagery. If we become aware of content with child sexual abuse imagery, we will report it to the appropriate authorities and delete the Google Accounts of those involved with the distribution."

20. This app, however, is a sexual health app for educational purposes. There is no sexually explicit material within this app. Google reviewed the app three times previously, and agreed (in Case Numbers 7-3822000003433, 3-1029000000524, and 6-7181000000492). The latest update to the app changed no visible content within the app, and SocialZoid's continued updating and promotion of this app was based on Google's repeated agreement in these cases that the content was acceptable, and as can be seen the consequence of Mr. Groset and SocialZoid's reasonable reliance on Google's acceptance was devastating, estopping Google from switching course far down the road – and, at the least, from basing a multiple violation account removal on the Kamasutra Animated HD app.

21. In fact, a search of Google Play for "Kamasutra" provides search results with dozens of other apps that exist on the same premise that Google banned this app and SocialZoid's account for. Worse yet, the specific app in question was itself approved by Google three times and had no content changed subsequent to those reviews.

22. The removal of the SocialZoid account and all other accounts even potentially related to Mr. Groset also purported to be based upon a June 16, 2014 "notification from Google Play" sent by Google saying that they had removed the SocialZoid "Fingerprint Lock Screen" for violation of the following content policy:

1  "REASON FOR REMOVAL: Violation of the Impersonation or Deceptive Behavior
2  provision of the Content Policy."

3  　　23.　　That policy reads: "Don't pretend to be someone else, and don't
4  represent that your app is authorized by or produced by another company or
5  organization if that is not the case. Products or the ads they contain also must not
6  mimic functionality or warnings from the operating system or other apps. Products
7  must not contain false or misleading information in any content, title, icon,
8  description, or screenshots. Developers must not divert users or provide links to any
9  other site that mimics or passes itself off as another app or service. Apps must not
10 have names or icons that appear confusingly similar to existing products, or to apps
11 supplied with the device (such as Camera, Gallery or Messaging)."

12 　　24.　　The Fingerprint Lock Screen app does nothing of the sort. First, it is
13 100% original work. Second, it clearly stated in its description that it was a novelty.
14 Third, the app was on Google Play for over two years before it was suddenly banned.
15 The permissibility of this app is further confirmed by a simple Google Play search for
16 "Fingerprint Lock Screen," which reveals dozens of similar apps that exist on the
17 same premise that Google banned this app.

18 　　25.　　Finally, the removal of the SocialZoid account and all other accounts
19 even potentially related to Mr. Groset also purported to be based on a May 8, 2014
20 "notification from Google Play" sent by Google, stating that they had removed
21 SocialZoid's "Top Truck Games Free" app, which cited the reason for removal as
22 follows: "REASON FOR REMOVAL: Violation of the Impersonation or Deceptive
23 Behavior provision of the Content Policy."

24 　　26.　　That policy is quoted above. But this app was 100% original and non-
25 deceptive. Below this reason, Google stated the app was miscategorized. There is no
26 statement regarding categorization within the content policy. By nature, it wasn't
27 violating the impersonation or deception behavior or any of content policy as

28

accused.  It appears that Google was not pleased that SocialZoid categorized this app as a "game" even though it has everything to do with Gaming. They banned the app within an hour after going live after a total of perhaps 3 downloads total.

      27.    Google's leading cause for deleting the accounts was the Kamasutra Animated HD that it had expressly *approved* three times.  However, on information and belief, Google did not go back and clear out the "cleared" violation notices or make any notations to avoid further harassment of SocialZoid with respect to this app.  As a result, Google's automated or nearly-automated system counted these three "cleared" violations as three separate violations against SocialZoid, and then simply deleted the accounts as a result.  This means that SocialZoid, or anyone for that matter, must be afraid to receive a notice of violation in the first place, even if they clear it with flying colors.

      28.    Google did not follow a "three strikes and you're out" policy, but instead a "three homeruns and you're out" policy.  The notice of violation is a pitch, and it apparently does not matter to Google one iota what the batter does with that pitch.

      29.    As a result of Google's actions, the following accounts have been removed in addition to the SocialZoid account:

      a. SocialTycoon@gmail.com: This is a personal account of Mr. Groset that was not currently in use, had two live apps, but had not been logged into in probably 1year or so. According to their policy you're allowed (1) business and (1) personal account. This was Mr. Groset's personal account.

      b. Snapstitute@gmail.com: This account belongs to a completely separate business, "Snapstitute, LLC," with a different EIN and address than SocialZoid.  It was operated by a family member of Mr. Groset, and appears to have been banned because it was at one time logged into by the same IP address as used by Mr. Groset.

# FIRST CAUSE OF ACTION

## UNFAIR COMPETITION AND FALSE ADVERTISING

**(15 U.S.C. § 1125 *et seq.*)**

30. Plaintiffs incorporate by reference all other paragraphs contained in this Complaint.

31. Google derives immense amounts of profit from the work done by third party app developers such as Plaintiffs on Google Play. But Google has created a content policy and review protocol that has become increasingly capricious. Google's violation protocol removes first, and allows for very little questions later. Google's internal systems are not even basic enough that cleared violations are relabeled as non-violations when it comes to reviewing an account for multiple violations.

32. For years, Google Play has received significant sums of customers, which have been turned into repeat customers that have bought other apps and will continue to do so, as a result of their experiences with SocialZoid (including approximately 2.5 million successful downloads of SocialZoid apps). In addition, Google has itself made profit (30%) off of the very apps it now claims supported its decision to remove SocialZoid.

33. In addition, Google requires each developer to pay $25 per year for each account. In return for this money, the app developer is to receive access to Google Play to provide apps in accordance with the use policies in place. However, in reality, even if an app developer complies with every policy in actuality, Google's review platform is fickle enough that Google will still end up deleting their account and keeping the $25. Google's appeal process is so lacking that there is no meaningful opportunity to clear the developer's name and regain access if a good faith app developer erroneously or inappropriately gets its account deleted. This is exactly what happened to SocialZoid, as alleged above.

34. Now that Google has received all the customers and secured to itself the ability to benefit from them further, Google sees no need for SocialZoid's continued participation in Google Play and has in bad faith removed SocialZoid.

35. This conduct is anticompetitive, was done in bad faith toward SocialZoid in this instance, and in addition constitutes false advertising in that it falsely represents to developers that if they pay $25 they can develop and profit from apps on Google Play if they comply with Google's written policies, when in fact Google removes even those who are complying with its policies (as was the case with SocialZoid).

36. These acts constitute acts of unfair competition which have caused substantial damage to Plaintiffs in the form of lost past and future sales, the $25 fee paid to Google, the sunk investment costs of the apps that SocialZoid can no longer post on its account, and all other damages, in an amount to be proven at trial, but exceeding $1 million.

37. There is no adequate remedy at law for these acts of unfair competition, and as a result Plaintiffs are entitled to injunctive relief in the form of a TRO, preliminary and permanent injunction requiring Google to restore the deleted Google Play developer accounts, remove any ban on Plaintiffs from Google Play, permanently remove the nonviolations from the "violations" listing on their compliance systems, and not take any actions against Plaintiffs in the future based on the conduct alleged in this Complaint.

## SECOND CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH EXISTING
## BUSINESS RELATIONSHIPS

38. Plaintiffs incorporate by reference all other paragraphs contained in this Complaint.

///

9

39. SocialZoid has existing business relationships with its customers, whereby they have downloaded its apps from Google Play. These customers rely on updates from SocialZoid to continue using the apps, and would have continued in their business relationships with SocialZoid (and expanding that business relationship to additional and other apps, given their overwhelmingly positive experience with SocialZoid's apps). Google has records of all existing customers of SocialZoid that downloaded SocialZoid's apps prior to Google's interfering actions.

40. By Google removing SocialZoid from Google Play, SocialZoid can no longer provide these updates or keep the other apps available for its existing customers to download.

41. Google had no legitimate basis for this arbitrary, capricious, and bad faith removal, as alleged above.

42. These actions were taken intentionally by Google, and for the express purpose of interfering with SocialZoid's ability to continue offering apps and updates to its existing customers on Google Play.

43. As a result, SocialZoid's existing business relationships have been halted, and interfered with in that they cannot continue (or can continue only at greatly increased cost and difficulty to SocialZoid) now that Google has removed SocialZoid from Google Play.

44. SocialZoid has been damaged in an amount to be proven at trial, but exceeding $1 million.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT

45. Plaintiffs incorporate by reference all other paragraphs contained in this Complaint.

46. Google was unjustly enriched by receiving the benefits of the increase in good will and customers brought to it by Plaintiffs.

10

47. Such enrichment was at the expense of Plaintiffs, who Google has now so flippantly removed from its Google Play platform.

48. Google was aware of the benefits conferred upon it by Plaintiffs' developer activities, and the hundreds of thousands of dollars in goodwill belonging to SocialZoid by virtue of its positive reputation on Google Play. By deleting Plaintiffs' accounts, Google garnished that goodwill and reputation for itself, redistributing it to Google Play and the other competing apps available on it that consumers would have to accept as a lesser substitute.

49. Google had a duty not to knowingly take any action likely to impair the value of SocialZoid's goodwill and apps on Google Play.

50. Google was enriched in direct proportion to the amount of goodwill and reputation left behind by Plaintiffs in the Google Play platform when their developer accounts were wrongly deleted.

51. The circumstances are such that in equity and good conscience it would be unjust for Google to retain these benefits, and restitution should be made to Plaintiffs accordingly.

52. Plaintiffs are entitled to an amount of money and value equal to the goodwill they had secured for themselves on the publicly accessible Google Play platform, the value of Google's unjust enrichment, in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## INJUNCTIVE RELIEF
### (28 U.S.C. §§ 2201, 2202)

53. Plaintiffs incorporate by reference all other paragraphs contained in this Complaint.

54. Plaintiffs did not violate any of the Google Play policies, and Google is capriciously enforcing its policies against Plaintiffs by failing to have an adequate

good faith system for handling erroneous notices of violation. Google has created a marketplace where at least 1.3 million third party apps live and breathe, and has acted in a way to impinge upon acceptable speech that it simply does not agree with. For example, Plaintiffs' Kamasutra Animated HD app promotes health and is in the public interest, but Google took issue with it despite its lack of any pornographic or other policy violating content.

55. Google had no right to terminate its developer relationship with SocialZoid.

56. Because Plaintiffs did not engage in any conduct justifying termination of their developer relationship with Google, or deletion of their developer accounts from Google Play, said deletion having caused and continuing to cause immediate, severe and irreparable damage to Plaintiffs, Plaintiff is entitled to declaratory and injunctive relief enforcing Plaintiff's rights. Plaintiffs further seek injunctive and declaratory relief declaring that they any violations noted on their accounts are to be removed, that their Google Play accounts are to be restored, and that they are not to have their accounts deleted again in any way based upon the actions identified in this Complaint.

57. A case of actual controversy has arisen within the meaning of 28 U.S.C. section 2201 with regard to the above matters as between Google and Plaintiffs, in that Google disagrees with Plaintiffs' positions stated herein, and Plaintiffs ask for declaratory relief to resolve the actual controversy between Google and Plaintiffs, as noted above.

58. Further relief or proper relief in the form of an injunction is warranted under the provisions of 28 U.S.C. section 2202, to the effect requested above.

///

///

///

# PRAYER

WHEREFORE, Plaintiffs demand the following relief for each cause of action unless otherwise noted:

1. A judgment in favor of SocialZoid and GROSET against Google on all counts;

2. A TRO, preliminary and permanent injunction requiring Google to restore the deleted Google Play developer accounts, remove any ban on Plaintiffs from Google Play, permanently remove the nonviolations from the "violations" listing on their compliance systems, and not take any actions against Plaintiffs in the future based on the conduct alleged in this Complaint;

3. Damages in an amount to be determined at trial;

4. Google's unjust enrichment and/or disgorgement of Google's profits;

5. Because Plaintiffs did not engage in any conduct justifying termination of their developer relationship with Google, or deletion of their developer accounts from Google Play, said deletion having caused and continuing to cause immediate, severe and irreparable damage to Plaintiffs, Plaintiff is entitled to declaratory and injunctive relief declaring that they have not breached the Developer Distribution Agreement or any incorporated policies, that any violations noted on their accounts are to be removed, that their Google Play accounts are to be restored, and that they are not to have their accounts deleted again in any way based upon the actions identified in this Complaint.

6. Declaratory relief declaring that Plaintiffs did not engage in any conduct justifying termination of their developer relationship with Google, or deletion of their developer accounts from Google Play;

7. Pre-judgment interest at the legally allowable rate on all amounts owed;

9. Costs and expenses;

10. Attorney's fees and other fees under, among others, 15 U.S.C. § 1117(a) *et seq.* as an exceptional case;

11. Restitution; and

12. Such other and further relief as this Court may deem just and proper.

Dated: September 10, 2014　　　　　MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC

By */s/Andrew S. Skale, Esq.*
　　Andrew D. Skale
　　Ben L. Wagner
　　Attorneys for Plaintiffs
　　SOCIALZOID, INC. and
　　ERIK GROSET

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial as to all issues that are so triable.

Dated: September 10, 2014　　　　　MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC

By */s/Andrew S. Skale, Esq.*
　　Andrew D. Skale
　　Ben L. Wagner
　　Attorneys for Plaintiffs
　　SOCIALZOID, INC. and
　　ERIK GROSET

31916467v.2